IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | Civil Action No. 1:16-cv-1025 |
| | § | |
| WYNGATE INTERNATIONAL, INC.; | § | |
| ZONE 7 COMMUNICATIONS LLC, | § | |
| LIVE LEAD PROS INC.; | § | |
| and DEAN AUSTIN, Individually | § | |
| Defendants | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

Plaintiff STATE OF TEXAS, acting by and through the Attorney General of Texas, KEN PAXTON, files this Complaint against WYNGATE INTERNATIONAL, INC., ZONE 7 COMMUNICATIONS LLC, LIVE LEAD PROS INC., and DEAN AUSTIN, individually, and for causes of action would respectfully show as follows:

### JURISDICTION AND VENUE

1.  This action is brought by Attorney General Ken Paxton, through his Consumer Protection Division, in the name of the STATE OF TEXAS and in the public interest, pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227(g) ("TCPA"), the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6103(a), and the Texas Telemarketing Disclosure and Privacy Act, Tex. Bus. & Com. Code § 304.001 *et seq.* (West 2015 & Supp. 2015) ("Texas No Call Act").

2.  This Court has jurisdiction over the subject matter of the claims under the TCPA pursuant to

47 U.S.C. § 227(g)(2). This Court further has jurisdiction over the subject matter of the claims under the TCPA and the Telemarketing Act pursuant to 28 U.S.C. § 1331, and has pendant jurisdiction over the subject matter of the claims under the Texas No Call Act pursuant to 28 U.S.C. § 1367.

3.      Venue of this suit lies in the Western District of Texas, Austin Division pursuant to 47 U.S.C. § 227(g)(4) because violations of the TCPA occurred within the Western District of Texas, as more specifically alleged below. Venue further lies in the Western District of Texas, Austin Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim alleged herein occurred within the Western District of Texas.

## DEFENDANTS

4.      Defendant Wyngate International, Inc. ("Wyngate") is a Delaware corporation that has its principal place of business in Florida. Defendant Wyngate has done business in Texas but is not registered to conduct business in the State of Texas and has not designated an agent for service of process in this State. This lawsuit arises out of Defendant Wyngate's business in this State as more specifically described below. Defendant can be served by serving its registered agent in Florida, Dean Austin, at 1007 N. Federal Hwy Suite #392, Ft. Lauderdale, FL 33304, or wherever he may be found.

5.      Defendant Zone 7 Communications LLC ("Zone 7") is a Florida limited liability company that has done business in Texas but is not registered to conduct business in the State of Texas and has not designated an agent for service of process in this State. This lawsuit arises out of Defendant Zone 7's business in this State as more specifically described below. Defendant can be served by serving its registered agent in Florida, Frances Fiman Pickens, at 1104 NW 88 Way, Plantation, FL 33322, or wherever she may be found.

6.      Defendant Live Lead Pros Inc. ("Live Lead Pros") is a Florida corporation that has done

business in Texas but is not registered to conduct business in the State of Texas and has not designated an agent for service of process in this State. This lawsuit arises out of Defendant Live Lead Pro's business in this State as more specifically described below. Defendant can be served by serving its registered agent in Florida, Louann Beyroutey, at 1761 MW 72nd Avenue, Plantation, FL 33313, or wherever she may be found.

7.      Defendant Dean Austin is an individual who resides in the State of Florida and may be served at his residence, 5541 NE 33rd Ave, Ft. Lauderdale, FL  33308, or wherever he may be found. Defendant Austin is the sole owner of Defendants Wyngate, Zone 7, and Live Lead Pros and Mr. Austin participates in and controls the day to day operations of each entity.

## ACTS OF AGENTS

8.      Whenever it is alleged in this petition that any Defendant did any act, it is meant that the Defendant performed or participated in the act or that Defendant's officers, agents or employees performed or participated in the act on behalf of and under the authority of a Defendant.

## PUBLIC INTEREST

9.      Plaintiff, STATE OF TEXAS, has reason to believe that Defendants have engaged in and continue to engage in a pattern or practice of initiating telephone calls to residents of the state of Texas which violate the TCPA, the Telemarketing Act, and the Texas No Call Act. Plaintiff also has reason to believe that Defendants have caused and will continue to cause injury, loss and damage to the STATE OF TEXAS, and that the interests of the residents of Texas have been or are being threatened or adversely affected by Defendants' actions.

## NATURE OF DEFENDANTS' OPERATIONS

10.     Defendants Wyngate, Zone 7, and Live Lead Pros are companies that generate sales leads (i.e. prospective customers) for their clients by making outbound telemarketing calls using an

automated telephone dialing system that delivers a prerecorded message to the call recipient (often referred to as robocalls). In most cases, if a call recipient expresses interest by pressing the appropriate button on the keypad (e.g. presses "1"), Defendants transfer the live call directly to the appropriate client.

11.     Defendants Wyngate, Zone 7, and Live Lead Pros are all solely owned and operated by Defendant Dean Austin. Defendant Austin participates in the day to day operations of the Defendant corporate entities and has directly participated in the conduct described below or has acted as the guiding spirit or central figure that has authorized the conduct described below.

12.     Defendants also operate under several other unregistered business names, including Live Lead Zone, iSlingshot, and Transferguru.com.

## STATEMENT OF FACTS

13.     Defendants, in generating leads for their clients, have placed millions of abusive telemarketing calls to the homes, offices, and cell phones of consumers nationwide, including in Texas. In placing such calls, Defendants utilize an automated telephone dialing system which, upon answer, delivers a prerecorded message. Although Defendants are well aware of the various federal and state telemarketing laws intended to protect the privacy of Texas consumers from unwanted and harassing phone calls, Defendants have willfully initiated millions of calls to Texas consumers in complete disregard for such laws.

14.     Defendants operate or have operated numerous websites through which they advertise their lead generation services, including transferguru.com, liveleadzone.com, zone7direct.com, and freshleadsunlimited.com. Liveleadzone.com, for example, touts that Defendants offer live leads in more than nineteen different industries, including "final expense" insurance, reverse mortgage, tax settlement, Medicare supplement, home security, and solar power. Defendants further advertise that

they have a database of over 250 million telephone numbers to which they can make calls and that they have a large database of generic prerecorded messages.   Defendants also represent that they will help train their customers' sales staff to answer calls.

15.   Defendants' websites and other marketing materials offer packages from as few as 200 leads (i.e. call transfers) to as many as 10,000.  Once a client buys Defendants' leads, the client specifies the states or geographic area from which they want leads and any specific demographic they are interested in (e.g. ages 65 - 72), and Defendants decide which databases are most appropriate and load those into their automated telephone dialing system.  Defendants also load into the system the appropriate recorded message.  At that point, the client simply has to log in and turn their account to active, and Defendants' automated telephone dialing system starts blasting calls out.

16.    When a consumer answers a call initiated by Defendants, the consumer is greeted by an automated, recorded message.  Sometimes those messages are misleading or unclear regarding what is being provided or offered.  Many consumers immediately hang up the phone call in frustration. For consumers who listen to the whole message, they are usually provided the option to press "1" or some other number on the keypad for additional information.  If the consumer presses that number on the keypad, he or she is transferred to Defendants' client and the client attempts to sell whatever good or service the client offers.  Each call transferred to the client is considered a lead and counts against the number of leads purchased by the client.

17.    If consumers are not interested in more information, they are also provided the option to press "2" or another number to be removed from Defendants' call list and not to receive any further call from Defendants.  Many consumers complain, however, that despite pressing the appropriate number on the keypad, they continue to receive calls from Defendants.

18.    Defendants have clients based in the State of Texas as well as clients that place calls into the

State of Texas.  For example, in 2015, Defendants had well over 200 clients who bought their leads, at least twenty of which were businesses based in Texas.  Many more of those clients, even if not based in Texas, included Texas in the geographic areas from which they were interested in receiving leads.  As a result, Defendants blasted out robocalls to millions of Texas consumers, including consumers in Travis County, Texas.

19.     Many of the robocalls made by Defendants and their automated telephone dialing system are made to mobile telephones of Texas consumers who have not provided Defendants consent to receive such calls.

20.     Many of the robocalls made by Defendants are also made to Texas consumers who have registered their telephone number on the federal and/or the Texas do-not-call list(s) (the "national do-not-call registry" and the "Texas no-call list" respectively) precisely to avoid receiving such calls.

21.     Defendants made calls to consumers on the do-not-call lists despite the fact that Defendants knew about the lists and knew that the law prohibits placing calls to consumers who have chosen to place their phone numbers on the list.  In fact, Defendant Austin first registered for the national do-not-call registry on behalf of Defendant Wyngate in December of 2007.  Unfortunately, although they registered for the national do-not-call registry, Defendants did not actually download any portion of the registry at that time.  Again in February of 2011 Defendants registered for the national do-not-call registry, this time under the name LiveLeadPros, Inc.  At that time, Defendants downloaded the portion of the registry that contained the phone numbers of a single California area code.  Defendants never again, at least not before being contacted by Plaintiff as part of its investigation, accessed the national do-not-call registry and downloaded any portion of it.

22.     In order to continue to perpetuate their illegal conduct, Defendants take steps to avoid being identified, including failing to transmit accurate Caller ID information.  Rather than transmitting

Caller ID information that includes Defendants' true identity or that of their client as required by law, Defendants transmit either no business name or a misleading business name, and a telephone number that cannot be readily traced to Defendants or to their client.  Moreover, Defendants recorded messages fail to identify Defendants or their clients.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

23.     Plaintiff realleges paragraphs one through twenty-two and incorporates them herein as if set forth here in full.

24.     The TCPA, 47 U.S.C. § 227, *et seq.*, was enacted to, among other things, protect the privacy interests of residential and wireless telephone subscribers from invasive telemarketing practices, particularly the use of automated dialing equipment or prerecorded voices to make unsolicited telemarketing calls.  The TCPA provides, for example, that it "shall be unlawful for any person within the United States, or any person outside the United States if the recipient is in the United States … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ..."  47 U.S.C. § 227(b)(1)(A)(iii).

25.     Defendants have violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii) by making unsolicited telephone calls to Texas consumers' cell phones using an automatic telephone dialing system and/or an artificial or prerecorded voice.

26.     The TCPA mandates that the Federal Communications Commission promulgate rules implementing the statute.  Those regulations in relevant part provide that "[n]o person or entity may … initiate any telephone call (other than a call made for emergency purposes or made with the prior

express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …" 47 C.F.R. § 64.1200(a)(1)(iii). The regulations go on to provide that "[n]o person or entity may … initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any [telephone number assigned to a … cellular telephone service] …, other than a call made with the prior express written consent of the called party…" 47 C.F.R. § 64.1200(a)(2).

27.     Defendants have violated 47 C.F.R. §§ 64.1200(a)(1)(iii) and 64.1200(a)(2) by making and/or causing to be initiated unsolicited telephone calls to Texas consumers' cell phones using an automatic telephone dialing system and by making unsolicited telephone calls to Texas consumers' cell phones using an artificial or prerecorded voice.

28.     The regulations promulgated by the Federal Communications Commission pursuant to the TCPA further provide that "[n]o person or entity may … [i]nitiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party" unless the call meets certain criteria not applicable in the present case. 47 C.F.R. § 64.1200(a)(3).

29.     Defendants have violated 47 C.F.R. § 64.1200(a)(3) by initiating and/or causing to be initiated unsolicited telephone calls to Texas consumers' residential phone lines using an artificial or prerecorded voice.

30.     The regulations promulgated by the Federal Communications Commission pursuant to the TCPA further provide that "[a]ll artificial or prerecorded telephone messages shall: (1) at the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under

which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated."  47 C.F.R. § 64.1200(b)(1).

31.     Defendants have violated 47 C.F.R. § 64.1200(b)(1) by making unsolicited telephone calls to Texas consumers which utilize an artificial or prerecorded telephone messages that fails to state the identity of the caller.

32.     The regulations promulgated by the FCC pursuant to the TCPA further provide that "[n]o person or entity shall initiate any telephone solicitation to ... a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry ...." 47 C.F.R. § 64.1200(c)(2).

33.     Defendants have violated 47 C.F.R. § 64.1200(c)(2) by making calls to residential telephone numbers that are registered on the national do-not-call registry.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE TELEMARKETING AND CONSUMER FRAUD AND**
**ABUSE PREVENTION ACT**

34.     Plaintiff realleges paragraphs one through thirty-three and incorporates them herein as if set forth in full.

35.     Congress passed the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101-6108 to prohibit abusive and deceptive telemarketing acts or practices.  Subsequently, the Federal Trade Commission ("FTC") pursuant to Congressional mandate adopted the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310 and its amendments.  Amendments to the TSR in 2003 included the creation of the federal do-not-call list. 68 Fed. Reg. 4580, 4669.

36.     Defendants are "telemarketer[s]" engaged in "telemarketing" and Defendants have initiated, or has caused to be initiated, "outbound telephone call[s]" to consumers to induce the purchase of goods or services, as those terms are defined in the TSR, 16 C.F.R. § 310.2.

37.     Among the practices deemed abusive by the FTC in the TSR is the practice of "[f]ailing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; provided that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours." 16 C.F.R. § 310.4(a)(8).

38.     Defendants have violated the TSR, 16 C.F.R. § 310.4(a)(8), by failing to transmit accurate business name when placing telemarketing calls to Texas consumers.

39.     The TSR also prohibits telemarketers from initiating any outbound telephone call to a person when that person's telephone number is on the national do-not-call registry. 16 C.F.R. § 310.4(b)(1)(iii)(B).

40.     Defendants have violated the TSR by making telemarketing calls to persons in Texas whose numbers are registered on the national do-not-call registry.

41.     The TSR further requires telemarketers in an outbound telephone call to disclose truthfully, promptly, and in a clear and conspicuous manner: (i) The identity of the seller; (ii) that the purpose of the call is to sell goods or services; and (iii) the nature of the goods and services. 16 C.F.R. § 310.4(d).

42.     Defendants have violated the TSR by making outbound telephone calls without truthfully disclosing the identity of the caller.

43.     Similarly, the TSR prohibits a telemarketer from initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the message

promptly discloses: (i) the identity of the seller; (ii) that the purpose of the call is to sell goods or services; and (iii) the nature of the goods and services.  16 C.F.R. § 310.4(b)(1)(v)(B)(ii).

44.     Defendants have violated the TSR by initiating outbound telephone calls in Texas that deliver a prerecorded message and that fail to disclose the identity of the seller.

45.     The TSR also prohibits initiating a telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, that evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller.  16 C.F.R. § 310.4(b)(1)(v)(A).

46.     Defendants have violated the TSR by initiating telephone calls in Texas, without the express agreement of the recipient of the call, that deliver a prerecorded message to induce the purchase of services.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE TEXAS TELEMARKETING DISCLOSURE AND PRIVACY ACT

47.     Plaintiff realleges paragraphs one through forty-six and incorporates them herein as if set forth in full.

48.     The Texas Telemarketing Disclosure and Privacy Act ("Texas No Call Act") makes it unlawful for a telemarketer to make a telemarketing call to a telephone number that has been published on the then-current Texas no-call list for more than sixty days.  Tex. Bus. & Com. Code § 304.052.  Defendants have violated the Texas No Call Act by making telephone calls to telephone numbers that were included on the then-current Texas no-call list for longer than sixty days.

49.     The Texas No Call Act also prohibits telemarketers from (i) blocking the identity of the telephone number from which the call is made to evade a device designed to identify a telephone

caller; (ii) interfering with or circumventing the capability of a caller identification service or device to access or provide to the recipient of the telemarketing call any information regarding the call that the service or device is capable of providing; or (iii) failing to provide caller identification information in a manner that is accessible by a caller identification service or device, if the telemarketer is capable of providing the information in that manner. Tex. Bus. & Com. Code § 304.151. Defendants' failure to transmit their business names and legitimate telephone numbers violates this section of the Texas No Call Act.

## PRAYER

50.     By reason of the acts and practices described herein above, Defendants have violated and will continue to violate the federal and state laws set forth above unless this Honorable Court enjoins them from doing so.

51.     WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited according to law to appear and answer herein; that after due notice and hearing a temporary injunction be issued on the terms set forth below; and that upon final hearing, a permanent injunction be issued, restraining and enjoining Defendants, their officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, from violating the TCPA, the FCC regulations promulgated pursuant to the TCPA, the TSR, or the Texas No Call Act, including but not limited to:

    a.     Placing any telephone call or causing any telephone call to be placed using an automated telephone dialing system to any cellular telephone number assigned to a Texas consumer;

b.   Placing any telephone call or causing any telephone call to be placed using an automated or prerecorded message to any cellular telephone number assigned to a Texas consumer;

c.   Placing any telephone call or causing any telephone call to be placed to any Texas telephone number that has been placed on the national do-not-call registry or the Texas no-call list;

d.   Placing any telephone call or causing any telephone call to be placed using any automated or prerecorded voice message without the prior express, written consent of the call recipient;

e.   Placing any telephone call or causing any telephone call to be placed to any Texas telephone number without transmitting Defendant's accurate telephone number and business name to any caller identification service in use by the called party;

f.   Placing any telephone call or causing any telephone call to be placed to any Texas telephone number while transmitting any inaccurate or misleading caller ID information;

g.   Misrepresenting, directly or indirectly, the entity that is making any telephone call to a Texas telephone number, including but not limited to using any false caller ID information or using any unregistered business name.

52.   In addition, Plaintiff STATE OF TEXAS respectfully prays that this Court adjudge against Defendants, jointly and severally, civil penalties in favor of Plaintiff STATE OF TEXAS in the following amounts for violations of the TCPA:

a.   Five Hundred and No/100 Dollars ($500.00) for each violation of 47 U.S.C. § 227 and 47 C.F.R. § 64.1200; and

     b.     One Thousand Five Hundred and No/100 Dollars ($1,500.00) for each such violation that was committed knowingly or willfully.

53.     Plaintiff STATE OF TEXAS further respectfully prays that this Court enjoin Defendants' telemarketing practices as alleged above, and Order Defendants to pay damages, restitution, or other compensation on behalf of residents of Texas, or to Order such further and other relief as the court may deem appropriate for violations of the TSR.

54.     Plaintiff further respectfully prays that this Court adjudge against Defendants, jointly and severally, civil penalties in the amount of:

     a.     One Thousand and No/100 Dollars ($1,000.00) for each violation of the Texas No Call Act; and

     b.     Three Thousand and No/100 Dollars ($3,000.00) for each violation of the Texas No Call Act that was committed knowingly or willfully.

55.     Plaintiff STATE OF TEXAS further prays that this Court order Defendants to pay all costs of Court, costs of investigation, and reasonable attorneys' fees pursuant to TEX. GOV'T CODE § 402.006(c).

56.     The Plaintiff further prays that the Court grant all other relief to which the Plaintiff may show itself entitled.

                         Respectfully submitted,

                         KEN PAXTON
                         Attorney General of Texas

                         JEFFREY C. MATEER
                         First Assistant Attorney General

                         BRANTLEY STARR
                         Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT
Chief, Consumer Protection Division

C. BRAD SCHUELKE
State Bar No. 24008000
IAN HOWE
State Bar No. 24087757
Assistant Attorneys General
Consumer Protection Division
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2185 (telephone)
(512) 473-8301 (facsimile)